

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

PP:SHP
F. #2025R00075

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 1, 2025

<u>By E-mail and ECF</u>

The Honorable Vera M. Scanlon
Chief Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. James Strong
      <u>Criminal Docket No. 25-214 (NGG)</u>

Dear Judge Scanlon:

  The government respectfully submits this letter in support of its application for the entry of an order of pretrial detention for defendant James Strong. As described below and in the seven-count indictment, the defendant unlawfully trafficked more than twenty firearms, including semi-automatic handguns, rifles, and shotguns. Moreover, Strong engaged in this conduct, and possessed these weapons, despite his prior felony conviction for first degree manslaughter in New York state, and the fact that he was released on parole less than two years ago. For these reasons and the reasons set forth below, the government respectfully submits that the defendant is both a danger to the community and a flight risk. Because no condition or combination of conditions can reasonably secure his appearance as required or the safety of the community, the defendant should be detained pending trial.

I. <u>Background and Offense Conduct</u>

  Since approximately January 2025, the government has been investigating the unlawful trafficking of firearms within New York City. During the investigation, between January and March 2025, over the course of five transactions, the defendant sold 21 firearms to two separate undercover officers ("UC-1" and "UC-2") in Queens, New York. The defendant, of course, did not believe he was selling guns to law enforcement officers. Instead, the UCs explained to Strong that the firearms would be shipped to Trinidad in "barrels." Strong, clearly aware of the illegal nature of such a scheme, noted that he was aware of an instance in which a woman had been arrested for similarly trafficking firearms to Trinidad. Nonetheless, Strong continued to sell firearms to the UCs despite the knowledge that what he was doing was clearly illegal.

The defendant is charged with unlawful firearms trafficking and unlicensed firearms dealing, in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 933. Count One charges the defendant with violating the gun trafficking provisions of the Bipartisan Safer Communities Act, Pub. L. No. 117-159, § 12004, 136 Stat. 1313 (2022) (codified at 18 U.S.C. § 933). Congress passed this law in part to curb the recent rise of gun violence throughout the United States by criminalizing firearms trafficking and the straw purchase of guns. In addition, Strong is also charged with being a felon in possession of firearms, in violation of Title 18, United States Code, Section 922(g).

The defendant's gun deals occurred at a series of intersections in Queens Village, New York, each of which was less than a quarter mile away from an elementary school. Almost all the deals occurred in the middle of the afternoon and in broad daylight, with Strong walking from his vehicle to the UCs' vehicle with bags loaded with guns and ammunition. As pictured further below, many of the guns were handguns that could be easily concealed, and others included semi-automatic shotguns and rifles and pistols capable of accepting high-capacity magazines.

II.     Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence, United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995), and risk of flight must be proven by a preponderance of the evidence, United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, including whether the offense involved a controlled substance or a firearm; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

Additionally, the possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See United States v. Jackson, 823 F.2d 4,7 (2d Cir. 1987); United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (concluding that maximum combined terms for defendant's charged crimes created "potent incentives to flee"); United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (concluding defendant was a flight risk because her knowledge of the seriousness of the charges against her created a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight."); United States v. Dodge, 846 F. Supp. 181, 184–85 (D. Conn. 1994) (observing that possibility of a "severe sentence" heightens risk of flight).

Evidentiary rules do not apply at detention hearings, and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130–31 (2d Cir. 2000). In the pretrial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffer. See LaFontaine, 210 F.3d at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted); see also United States v. Mercedes, 254 F.3d 433, 437 (2d Cir. 2001) ("[The defendant] has twice been convicted of weapon possession—one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

III.   Argument

The defendant poses a danger to the community based on his role in trafficking more than 20 dangerous firearms in New York City. Moreover, the overwhelming evidence gathered during the investigation, coupled with the high penalties the defendant faces, gives him a strong incentive to flee. Accordingly, the defendant should be detained pending trial.

    A.   The Defendant Poses a Serious Danger to the Community

The defendant should be detained pending trial because he poses a serious danger to the community. See 18 U.S.C. § 3142(g). The defendant, despite being a felon himself, sold 21 dangerous firearms to individuals he believed to be trafficking the firearms to Trinidad. The guns involved included easily concealed pistols, but also included rifles and other firearms capable of accepting high-capacity magazines. The way the defendant sold the guns also endangered our neighbors in Queens: the defendant engaged in these sales just blocks away from an elementary school. Worse still, these sales often occurred in broad daylight, which demonstrates the brazenness of the defendant in disobeying the law.

Courts in this Circuit regularly order pretrial detention in cases involving gun trafficking or possession of firearms. See, e.g., United States v. Peters, No. 25-CR-118 (DLI), 2025 WL 1088029, at *3 (E.D.N.Y. Apr. 11, 2025) (ordering detention and finding defendant "poses a danger to the community based on his participation in a conspiracy to traffic over twenty firearms into New York City"); United States v. McCann, No. 23-CR-08 (WFK), 2023 WL 2857917, at *6 (E.D.N.Y. Apr. 10, 2023) (ordering detention of defendant involved in firearms trafficking conspiracy); United States v. Clarke, No. 22-CR-341 (LDH), ECF Nos. 4, 13, 14 (E.D.N.Y. June 28, 2022) (same); United States v. Smalls, No. 20-CR-126, 2020 WL 1866034, at *1 (S.D.N.Y. Apr. 14, 2020) (affirming magistrate judge's order of detention that was based, in part, on "the general danger to the community posed by [the defendant's] apparently ready access to firearms"); United States v. Williams, No. 20-CR-293-2, 2020 WL 4719982, at *3 (E.D.N.Y. Aug. 13, 2020) ("[T]he danger of Defendant's release is demonstrated through the fact [that] Defendant's instant and past offense involved the use of a firearm."); United States v. Thompson,

3

436 F. Supp. 3d 631, 636 (W.D.N.Y. 2020) (ordering detention of defendant responsible for firearms and narcotics trafficking offenses); United States v. Gumora, 454 F. Supp. 3d 280, 291 (S.D.N.Y. 2020) (ordering detention of defendant charged with being a felon-in-possession and possession of narcotics on dangerousness grounds, despite contention that his asthma put him at "increased risk of getting severely ill or dying" from COVID-19 while incarcerated); United States v. Harris, No. 19-CR-300, 2020 WL 4014901, at *7 (S.D.N.Y. July 16, 2020) ("Defendant's arrest for being a felon in possession itself raises the specter of danger to the community.").

The twenty-one firearms sold by Strong to the UCs between January 23, 2025, and March 13, 2025, are pictured below:







In addition, Strong himself has a history of violent conduct. Most notably, Strong was convicted on February 14, 2008, following a plea of guilty, of first-degree manslaughter, in

4

violation of New York Penal Law Section 125.20.  Strong's conviction stemmed from a 2007 incident in which he shot an individual eight times, killing him, at a birthday party in Valley Stream, New York.  Strong was sentenced to an eighteen-year term of custody, to be followed by five years of post-release supervision.  Strong was subsequently released on parole on October 18, 2023.

Less than a year after his release on parole, Strong was again arrested for violent conduct.  On September 16, 2024, the Long Beach, New York, Police Department received a call of a domestic disturbance in front of 112 W Fulton Street, Strong's residence.  Police arrived and observed Strong engaged in a verbal altercation with the caller.  Because the caller reported the presence of a firearm, the police searched Strong, and subsequently observed a Sig Sauer pistol in plain view in the rear trunk of Strong's vehicle.  Police recovered the firearm, which contained a 17-round magazine with 15 bullets inside, and Strong was arrested for Criminal Possession of a Weapon in the Second Degree, Assault in the Second Degree, two counts of Criminal Possession of a Weapon in the Third Degree, and Criminal Possession of a Weapon on School Grounds.  The charges remain pending as of the date of this letter.  The defendant's repeated disregard for the law, history of violent conduct, and continued unlawful possession of deadly firearms further demonstrate that he poses an intolerable danger to the community.

      B.      <u>The Defendant Poses a Flight Risk</u>

The defendant should also be detained pending trial because he is a flight risk.

<u>First</u>, the defendant faces significant punishment.  He is charged with firearms trafficking offenses that carry a term of imprisonment up to 15 years.  <u>See</u> 18 U.S.C. § 933(b).  Furthermore, an initial estimate of the Sentencing Guidelines for Strong indicate that his recommended Guideline sentence is likely to be at the statutory maximum.  On its own, the likelihood of a lengthy term of imprisonment gives the defendant a strong incentive to flee.  <u>See</u> <u>United States v. Blanco</u>, 570 F. App'x 76, 77 (2d Cir. 2014) (affirming district court's order of detention where defendants faced lengthy term of imprisonment).  It also minimizes any risk that pretrial detention would result in an over-served sentence.

<u>Second</u>, the weight of the evidence heightens the defendant's incentive to flee.  The evidence of the defendant's involvement in the alleged conduct is overwhelming and includes recorded calls between the defendant and the undercovers, audio and video recordings of each of the firearms sales to the undercovers, and physical evidence including firearms and ammunition.  Where, as here, the evidence of guilt is strong, there is "a considerable incentive to flee." <u>Millan</u>, 4 F.3d at 1046; <u>see also</u> <u>United States v. Palmer-Contreras</u>, 835 F.2d 15, 18 (1st Cir. 1987) (<u>per curiam</u>) (noting that where "the evidence against defendants is strong, the incentive for relocation is increased").

IV.    <u>Conclusion</u>

        For the foregoing reasons, the government respectfully requests that the Court order the defendant detained pending trial.

                                             Respectfully submitted,

                                             JOSEPH NOCELLA, JR.
                                             United States Attorney

                              By:    <u>/s/ Stephen H. Petraeus</u>
                                             Stephen H. Petraeus
                                             Assistant U.S. Attorney
                                             (718) 254-6352

cc:    Clerk of Court (VMS) (by e-mail)
       Defense Counsel (by e-mail)